UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN NELSON COATS, JR.,

       Plaintiff,

v.                                         Case No. 8:21-cv-01762-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

       Defendant.
_____/

**ORDER**

     Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

     Plaintiff initially filed an application for a period of disability and DIB on March 7, 2018 (Tr. 329). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 109, 129). Per Plaintiff's request, the ALJ held a hearing on February 5, 2020 at which Plaintiff

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

appeared and testified (Tr. 68). On April 1, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 146). However, Plaintiff appealed to the Appeals Council which remanded the case (Tr. 153). The Appeals Council remanded the case for the ALJ to consider evidence provided by Dr. Brent Agin (Tr. 153). The Appeals Council explained that the evidence was submitted before the adjudication date, it was new and material, it had not been previously submitted, and it related to the issues of the claimant's impairment, however, the evidence was not included on the "List of Exhibits" nor did the ALJ otherwise evaluate it (Tr. 153). Thus, on remand, the ALJ held a second hearing on January 19, 2021 (Tr. 36). Following that, on March 17, 2021, the ALJ issued another unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1970, claimed disability beginning April 30, 2017 (Tr. 97, 327). Plaintiff obtained a college education and a master's degree in administration in 2004 (Tr. 75). Plaintiff's past relevant work experience included work as a Budget Analyst (Dictionary of Occupational Titles ("DOT") # 161.267-030 and Comptroller (DOT# 160.167-058) (Tr. 26). Plaintiff alleged disability due

2

to post-traumatic stress syndrome ("PTSD"), bi-polar disorder, depression, anxiety, and issues associated with his knees and lower back (Tr. 98).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since April 30, 2017, the alleged onset date (Tr. 16, 18). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: obesity; lumbar spine spondylosis; bilateral knees osteoarthritis; status post partial nephrectomy; bipolar disorder; major depression; anxiety; and PTSD (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except that he can stand and/or walk and sit about 6 hours each in an 8-hour workday considering the standard breaks every 2 hours; frequently climb, balance, kneel, crouch, and crawl; occasionally stoop; must avoid climbing scaffolds, ropes, or at open, unprotected heights; must avoid operation of dangerous machinery and tools; and is able to understand and carryout routine, repetitive, unskilled tasks, make basic decisions, and adjust to simple changes in a work setting, as long as interaction with the public, coworkers, and supervisors would be limited to occasional

(Tr. 21). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting

3

effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 26). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a Marker (DOT# 222.587-038), Office Helper (DOT# 239.567-010), and Cleaner/Housekeeping (DOT# 323.687-014) (Tr. 27). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 27).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

In the parties' 92-page joint memorandum, Plaintiff argues that the ALJ erred in seven respects. First, Plaintiff argues that the ALJ failed to properly weigh Dr. Butler's and APRN Refuse's opinions and failed to weigh at all Dr. Perez-Millan's and Dr. Letsch's opinions, the Global Assessment of Functioning ("GAF") scores, and rehabilitation counselor Scott's opinion (Doc. 22, at 24). Second, Plaintiff argues the RFC and hypothetical question to the VE fail to reflect the limitations found by the ALJ by omitting the ALJ's finding that Plaintiff is limited to simple tasks (Doc. 22, at 42). Third, Plaintiff argues the ALJ failed to consider the evidence and findings of the VA pertaining to the impact of Plaintiff's PTSD (Doc. 22, at 44). Fourth, Plaintiff argues that the ALJ failed to include in the RFC restrictions related

to moderate limitations in mental functioning and failed to exclude jobs requiring the ability to carry out detailed instructions given that the State agency psychological examiners found Plaintiff limited in understanding, remembering, and carrying out detailed instructions and the ALJ found those opinions highly persuasive (Doc. 22, at 49). Fifth, Plaintiff argues the ALJ erred in finding Plaintiff could perform work with an SVP level of 2 given that the Social Security Administration had told Plaintiff he could perform work requiring only a short, on-the-job training period which is consistent with SVP level of 1 (Doc. 22, at 60). Sixth, Plaintiff argues the ALJ erred in finding Plaintiff could perform more than sedentary work and that if the ALJ had properly limited him to sedentary work he would have been disabled under the Medical-Vocational Guidelines ("grids") upon turning 50 in October 2020 (Doc. 22, at 64–65). Finally, Plaintiff argues the appointment of Andrew Saul as a single commissioner of SSA who is removable only for cause and serves a longer term than that of the President violates separation of powers; therefore, Plaintiff argues the decision in this case, by an ALJ and Appeals Council judges who derived their authority from Mr. Saul, is constitutionally defective (Doc. 22, at 74). For the following reasons and as to each of Plaintiff's arguments, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

## A.  The ALJ's Formation of the RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§

404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, the ALJ considers medical opinions as well as all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). While the ALJ must consider the Plaintiff's medical condition as a whole, "[t]here is no rigid requirement that the

ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted). Instead, the ALJ need only provide "enough to enable [this Court] to conclude that [the ALJ] considered [claimant's] medical condition as a whole." *Id.*

As indicated, in addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms,[2] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, consideration of a claimant's symptoms involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3–9. If the ALJ determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3–9. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for

---

[2] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i).

9

doing so. *Wilson*, 284 F.3d at 1225. A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).

> Here, the ALJ concluded that Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except that he can stand and/or walk and sit about 6 hours each in an 8-hour workday considering the standard breaks every 2 hours; frequently climb, balance, kneel, crouch, and crawl; occasionally stoop; must avoid climbing scaffolds, ropes, or at open, unprotected heights; must avoid operation of dangerous machinery and tools; and is able to understand and carryout routine, repetitive, unskilled tasks, make basic decisions, and adjust to simple changes in a work setting, as long as interaction with the public, coworkers, and supervisors would be limited to occasional.

(Tr. 21). The ALJ stated that he reached this determination after a considering all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as the medical opinions and prior administrative findings (Tr. 21–25).

In Plaintiff' initial disability report, Plaintiff alleged that he is unable to work due to limitations associated with his PTSD, bipolar disorder, depression, anxiety, left/right knees, and lower back (Tr. 21, 369). Plaintiff alleged that he had back pain when bending or twisting and knee pain when going up or down stairs (Tr. 21, 384). He also reported that he does limited cleaning of the home, his wife takes care of the household, and he does no gardening or yard work (Tr. 385–86). Plaintiff also reported having panic attacks that last 20 to 30 minutes with flashbacks to combat

during his deployment in Afghanistan (Tr. 388). Plaintiff explained that after his time in the Air Force, he tried to work but the stress of the job made him unable to due to anxiety attacks, the stress of deadlines, and difficulties with concentration (Tr. 390). Plaintiff reported taking care of pets but struggling with other personal care (Tr. 391–92). Plaintiff reported losing interest in hobbies, struggles with handling changes in his routine, and conflict with authority figures (Tr. 394–96).

Plaintiff was medically retired from the Air Force on May 28, 2016 (Tr. 78). At the hearing in February 2020, Plaintiff testified that while in the Air Force, he served as a comptroller in the finance department but was removed from his command and then spend two months in an Army PTSD inpatient facility (Tr. 78, 80). After Plaintiff's military service, from 2016 to 2017, he worked for his brother-in-law's company in finance and budgeting but was let go because it was "too much" for him (Tr. 82). Following that, Plaintiff worked in a dive shop in 2018 but left due to challenges with working with customers and flashbacks (Tr. 84). Plaintiff described having daily flashbacks with rage due to his PTSD (Tr. 84, 88). He also mentioned his struggles with anxiety and depression and that he needs to lay down often due to pain and fatigue (Tr. 88–89). As for physical activity, Plaintiff stated he could tolerate lifting 30 pounds (Tr. 85). Plaintiff stated he cleans the house, cares for two dogs, a cat, and some fish, makes his children's lunches for school, picks them up from school, and makes dinner for them every night (Tr. 83). At the hearing in January 2021, Plaintiff echoed largely the same symptoms as the year prior (*see* Tr. 36–67). Plaintiff described being in serious pain and only able to walk "a minute

11

or two" (Tr. 48). Plaintiff reiterated his ability to lift 30 pounds and even noted he does so monthly when he picks up dog food bags (Tr. 54). Plaintiff noted he cleans the house, but not every day, and cooks simple meals (Tr. 57). He again voiced his dislike for other people and how he no longer enjoys his hobbies of golf and scuba diving (Tr. 56–57).

As for treatment of physical impairments, the ALJ noted Plaintiff was diagnosed with kidney cancer in November 2017 and had a partial nephrectomy in January 2018 (Tr. 1472). There had been no recurrence of his cancer at the time of the ALJ's decision (Tr. 22). The ALJ highlighted that despite complaints of knee and back pain, Plaintiff's "treatment records indicate no significant physical abnormalities prior to November 2017" and that in October 2018, "a week after requesting and receiving a physician letter stating that he is physically stable to do the master diver's certification, the claimant complained of knee and back pain with a pain level of 3/10" (Tr. 22, 800–802, 1831, 1836–38, 1947–51, 2109–11). The ALJ noted that Dr. Lokesh "only encouraged the claimant to lose weight and be physically active (Tr. 1739, 1830, 1877, 1978). At his follow up in November 2018, he denied experiencing pain and again reported no pain in January, February, April, and July 2019 (Tr. 22, 1726, 1740, 1752, 1774, 1788). The ALJ also noted that Dr. Candace Koney-Laryea conducted a consultative examination and reported that Plaintiff complained of knee and back pain and showed a limited range of motion in his cervical spine and lumbar spine, decreased strength in his upper and lower extremities, and was only able to squat 70% full (Tr. 22, 1616–18). Finally, the ALJ

noted Plaintiff's body mass index (BMI) was above 30 kg/m$^2$ which qualifies as obese under medical standards (Tr. 22).

As for mental impairments, Plaintiff began treatment for bipolar disorder and PTSD with F. Kevin Butler, M.D., in 2015 while active duty in the Air Force (Tr. 1527) and was later referred to therapy with Debra Gleason, Ph.D., which Plaintiff began in 2016 (Tr. 932). Plaintiff continued treatment with these providers after his military service ended in May 2016 (*see, e.g.,* Tr. 893, 896, 923, 925, 937, 1533, 1538, 1540, 1542). The ALJ noted that in April 2017, Dr. Gleason observed Plaintiff appeared depressed and reported concerns about family finances and his daughter, who was "Baker Acted," but otherwise had an appropriate appearance, was cooperative, his cognition was within normal limits, had adequate concentration, and intact memory (Tr. 22, 1123). Plaintiff also attended a depression support group (Tr. 1124). The ALJ noted that around this time, Plaintiff went to Pennsylvania with family, started scuba diving again, cleaned and organized the garage, went to Destin for a week, and went kayaking (Tr. 22, 1105). The ALJ noted that in the fall of 2017 Plaintiff began a PTSD support group and Dr. Butler noted Plaintiff was anxious, had a short attention span, and had signs of mild depression but had appropriate effect, fair insight and judgment, intact cognitive functioning and memory, and was cooperative (Tr. 23, 1558). Plaintiff had increased depressive symptoms after his kidney cancer diagnosis in November 2017 but his mood improved after his surgery was successful (Tr. 23, 1457, 1470). In March 2018, Dr. Butler observed signs of moderate depression, but no signs of attentional difficulties

and he had intact cognitive functioning (Tr. 1560). However, in the fall of 2018, after Plaintiff's daughter was "Baker Acted" again and expelled from school, he reportedly struggled with his daughter's behavior and being a "house husband," but he continued to go out with his friends twice a week (Tr. 1801, 1804, 1806, 1826). In November 2018, Plaintiff reported that he was working on his dive master certification (Tr. 1804). In January 2019, the claimant reported he was going to the gym and wanted to scuba dive more but did not have much time due to family commitments (Tr. 1780). In March 2019, Plaintiff began decreasing his medication (Tr. 2503). Around this time Plaintiff also took his children without his spouse to visit Houston (Tr. 1749). Plaintiff reported that he had changed from not doing much to doing everything around the house and he socialized with friends (Tr. 1746). The next month, he hosted a barbecue at his house and went to Las Vegas with his wife (Tr. 1736, 1743). Plaintiff reported continuing challenges with his daughter and his wife, and in July 2019, Dr. Butler noted he appeared sad and listless at his follow up and reported struggling to find a sense of purpose (Tr. 2508). At his November 2019, Plaintiff had signs of severe depression and depressed thought content, but had intact cognitive functioning, developmentally appropriate insight and judgment, and was cooperative and attentive (Tr. 2540). Plaintiff continued treatment at Behavioral Healthcare through 2020 (Tr. 2648, 2651). He reported episodes of depression and rage, flashbacks of war, and self-isolation, but reported that his anxiety is managed, he sleeps soundly with Trazodone, and medication diminished his night terrors (Tr. 2648, 2651). He also reported that he

14

and his wife were working on their relationship, and he volunteers with his son's football team which has given him joy again (Tr. 2651). On exam, he appeared sad looking, his demeanor was glum, and appeared downcast but, he was attentive and denied suicidal ideations (Tr. 2649, 2652). In addition, his cognitive functioning, fund of knowledge, and memory were intact, he was cooperative and attentive, and his judgment and insight were fair (Tr. 2649, 2652). He also continued his peer support for PTSD through telehealth due to COVID through 2020 (*see e.g.,* Tr. 2673, 2674, 2680, 2683, 2695, 2701). Furthermore, the claimant was treated at Metabolix Wellness Center by Dr. Brent Agin from December 2018 through September 2020 for his multiple conditions with cannabis, testosterone,  and ketamine intravenous therapy (Tr. 1657–564, 2634). By March 2019, he reported doing well with ketamine and cannabis, testosterone, and a human chorionic gonadotropin (HCG) diet and stated he was doing much better mentally and physically, reporting his "mood is good" and "no anger episodes" (Tr. 2603, 2605).

Ultimately, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the objective medical evidence (Tr. 24).

To address Plaintiff's musculoskeletal impairments, the ALJ limited Plaintiff to the light exertional level with no more than frequent climbing, balancing kneeling, crouching, and crawling and occasional stooping (Tr. 24). The ALJ

rejected Plaintiff's allegations of further physical limitations as not consistent with the evidence of record. First, the ALJ noted that Plaintiff's treatment for back and knee pain has been minimal since the alleged onset date (Tr. 24). Second, the ALJ cited that Plaintiff's treating professionals had not reported any significant physical abnormalities and Plaintiff's imaging contained only mild findings (Tr. 24). The ALJ also reasoned that the RFC of light work with postural limitations accounted for Plaintiff's obesity and the stress that excess weight can place on his weight bearing joints that may contribute to the limitation of the range of motion of the skeletal spine and extremities (Tr. 24).

To address the claimant's moderate mental health limitations, the ALJ limited Plaintiff's RFC to simple instructions, routine repetitive unskilled tasks, and occasional interaction with co-workers, supervisors, and the public (Tr. 24). The ALJ also limited the RFC to preclude exposure to open unprotected heights and operation of dangerous machinery and tools to address Plaintiff's possible lapses in concentration. In support of those limitations, the ALJ also found that Plaintiff's allegations regarding the severity of his mental health limitations were not supported by the record (Tr. 24). The ALJ acknowledged that Plaintiff has episodes of increased depression due to financial or familial stressors as well as "occasional triggers of mental symptoms causing abnormal mental status" (Tr. 24). However, the ALJ found that Plaintiff's symptoms were well managed with medication and Plaintiff has not required any emergency or inpatient care (Tr. 24). Additionally, the ALJ cited to Plaintiff's mental status examinations which have documented that

16

Plaintiff was cooperative and attentive, had intact memory and cognition, and logical thought content (Tr. 24). The ALJ also noted Plaintiff's "significant daily activities including taking care of his children, traveling, scuba diving, going out with friends twice a week, volunteering at his son's football games, and doing household chores" (Tr. 24).

After considering the record and the ALJ's decision as discussed in the foregoing, the Court finds that the ALJ's formation of the RFC was supported by substantial evidence and applied the correct legal standards. Plaintiff raises several challenges against the ALJ's consideration of the record and formation of the RFC. Each will be considered in turn.

### a. Medical Opinions

Plaintiff first argues that the ALJ erred in his evaluation of several medical opinions. Specifically, Plaintiff argues the ALJ (1) failed to properly weigh Dr. Butler's opinions, (2) failed to properly weight APRN Refuse's opinions; (3) failed to weigh at all Dr. Perez-Millan's and Dr. Letsch's opinions, (4) failed to weigh at all Plaintiff's Global Assessment of Functioning ("GAF") scores, and (5) failed to weigh at all rehabilitation counselor Scott's opinion (Doc. 22, at 24).

Because Plaintiff applied for DIB on March 8, 2018 (Tr. 327) the new SSA regulations apply to how the ALJ considers medical opinions. *See* 20 C.F.R. § 404.1520c; *see also Simon v. Comm'r of Soc. Sec.*, No. 19-14682, 2021 WL 3556433, at *7 n.4 (11th Cir. Aug. 12, 2021) (indicating that 20 C.F.R. § 404.1527 only applies to disability claims filed before March 27, 2017, and claims filed after that date are

governed by 20 C.F.R. § 404.1520c, which prescribes a somewhat different framework for evaluating medical opinions). Namely, under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization. 20 C.F.R. § 404.1520c(c)(1)–(4). Medical evidence that does not rise to an opinion under the regulations is treated differently. This category of evidence includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513 (a)(3). The ALJ must consider other medical evidence but need not articulate her findings regarding its persuasiveness. *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022).

Plaintiff challenges the way in which the ALJ handled the medical opinions in the record in two ways: Plaintiff first challenges the way in which the ALJ evaluated the persuasiveness factors with regard to Dr. Butler's opinions and APRN Refuse's opinions. Plaintiff argues the providers' opinions were consistent and

supportable and therefore the ALJ erred in finding them unpersuasive (Doc. 22, at 28). Plaintiff next takes issue with the fact that the ALJ did not weigh other purported medical opinions according to the regulation's factors. Plaintiff makes this argument with regard to Dr. Perez-Millan's and Dr. Letsch's statements, rehabilitation counselor Scott's statements, and Plaintiff's GAF scores (Doc. 22, at 24). Each argument will be considered in turn.

### i.  Evaluation of Persuasiveness

As already noted, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization.  20 C.F.R. § 404.1520c(c)(1)–(4).  However, the primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency.  20 C.F.R. § 404.1520c(a) & (b)(2).  Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(1).  Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be.   20 C.F.R. § 404.1520c(c)(2).   And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations do not require the ALJ to explain the

consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)–(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[3] 20 C.F.R. § 404.1520c(b)(2).

### 1. Dr. Butler

Dr. Butler, who Plaintiff had been seeing since 2015, opined that Plaintiff's memory is poor, he is extremely limited in the abilities to remember locations and work-like procedures and to understand and remember detailed instructions, and he is markedly limited in the ability to understand and remember very short and simple instructions (Tr. 1625). Regarding interaction with others, Dr. Butler opined Plaintiff was limited in social interaction because of a tendency for paranoia and was "very extremely" impaired in the abilities to work in coordination with or proximity to others without being distracted by them and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr.

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

1625).  He opined Plaintiff was extremely impaired in the abilities to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (Tr. 1625–26). He further opined that Plaintiff was markedly impaired in the ability to ask simple questions or request assistance (Tr. 1625). Regarding concentration, persistence, and pace, Dr. Butler opined Plaintiff was not capable of sustaining work activity for eight hours per day, five days per week due to poor concentration and memory and was "very extremely" impaired in the abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 1568, 1625). He also opined Plaintiff was extremely impaired in the abilities to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and sustain an ordinary routine without special supervision (Tr. 1625–26).  Despite his other findings, Dr. Butler found Plaintiff competent to manage funds (Tr. 1568).

In considering Dr. Butler's opinions, the ALJ noted that Dr. Butler opined that the claimant is severely disabled, and he is unable to sustain work activity on a full-time basis (Tr. 25, 1568). The ALJ also noted that in October 2018, Dr. Butler opined that the claimant has marked to extreme limitations in several functional areas and that Dr. Butler attributes these limitations to a "debilitating mental illness

that has incapacitated him emotionally and socially since June 2015" (Tr. 25, 1625–26). The ALJ found that record evidence of Plaintiff's "activities of taking care of the household, traveling, and intact cognitive function demonstrates that the claimant is cable of managing funds. However, the remainder of Dr. Butler's opinion is not persuasive" (Tr. 25). The ALJ reasoned that "there was little to no discussion of the signs to support such considerable limitations and the opinion is inconsistent with more moderate mental status examination findings from Dr. Butler's treatment notes and the other treatment records" (Tr. 25). Moreover, the ALJ added, in contrast to Dr. Butler's opinion that Plaintiff has been limited in this way since June 2015, Plaintiff worked until April 2017 (Tr. 25).

Importantly, in arguing the ALJ erred in his evaluation of Dr. Butler's opinion, Plaintiff fails to challenge the ALJ's conclusions in support of his finding that Dr. Butler's opinion was unpersuasive (*see* Doc. 22, at 27). Specifically, Plaintiff does not challenge the ALJ's reasoning that Dr. Butler's opinion was unpersuasive because (1) there was little to no discussion of the signs to support Dr. Butler's considerable limitations; (2) it is inconsistent with more moderate mental status examination findings from Dr. Butler's treatment notes and the other treatment records; and (3) the record demonstrate that during the same time Dr. Butler opined that Plaintiff was so limited (beginning in June 2015) Plaintiff continued working (until April 2017) (Tr. 25). Plaintiff's argument merely asks the Court to reevaluate the evidence and consider the persuasiveness of the opinion again according to the supportability and consistency factors (*see* Doc. 22, at 27 (arguing Dr. Butler's

opinion was supported by his medical records and consistent with APRN Refuse's opinion)). This is not the role of the reviewing court. In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth*, 703 F.2d at 1239. Thus, for the same reasons as in *Walker v. Comm'r of Soc. Sec. Admin.*, the ALJ's decision on this issue is due to be affirmed. No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citations omitted) (affirming ALJ's evaluation of a medical opinion where the plaintiff failed to specifically challenge the ALJ's reasoning in relation to the factors); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (stating a court's "judgment is due to be affirmed" when an appellant fails to challenge one of the grounds on which the court made its decision).

In any event, the ALJ's decision is supported by substantial evidence. There is evidence in the record to support the ALJ's conclusion that there was little to no discussion of the signs to support Dr. Butler's considerable limitations (*see* Tr. 1566–68, 1625–26). There is evidence to support the ALJ's conclusion that Dr. Butler's opinion is inconsistent with more moderate mental status examination findings from Dr. Butler's treatment notes and the other treatment records (*compare* Tr. 1568 (reporting in April 2016 that Plaintiff had a sullen and depressed mood, tangential thought processes, difficulty with social interaction, poor concentration and memory, and impulsivity) *with* Tr. 1560 (noting in March 2016 Plaintiff was

friendly, attentive, and communicative, had logical and intact associations and intact short and long term memory with the ability to abstract and do arithmetic calculations; noting Plaintiff had "cognitive functioning in the normal range" with "no signs of attentional difficulties" and was "cooperative and attentive with no gross behavioral abnormalities"). The record also does in fact demonstrate that during the same time Dr. Butler opined that Plaintiff was so limited (beginning in June 2015) Plaintiff worked until April 2017 (Tr. 25, 369, 1625).

### 2.  APRN Refuse

APRN Refuse filled out a Mental Residual Functional Capacity Assessment in November 2020 (Tr. 2636–44). Regarding memory, APRN Refuse opined that Plaintiff is constantly impaired in the ability to remember locations and work-like procedures; understand and remember very short and simple instructions; and understand and remember detailed instructions (Tr. 2636). APRN Refuse found Plaintiff extremely limited in the ability to understand, remember, or apply information (Tr. 2639, 2642).  Regarding interaction with others,  APRN Refuse opined that Plaintiff was constantly impaired in the ability to work in coordination with or proximity to others without being distracting them or exhibiting behavioral extremes; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (Tr. 2636–37). She also opined that Plaintiff was markedly impaired in the ability to ask simple questions or request assistance (Tr. 2636–37). Regarding concentration,

persistence, and pace, APRN Refuse opined Plaintiff was constantly impaired in the abilities to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain a routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 2636). APRN Refuse found Plaintiff was extremely limited in the ability to concentrate, persist, or maintain pace (Tr. 2639, 2642).

The ALJ found APRN Refuse's opinion not persuasive (T. 26). The ALJ noted the opinion found "constant and extreme limitations" but reasoned that the opinion was not consistent with the objective record evidence of mental status exams which noted that Plaintiff occasionally had a mental status of depressed mood but was intact cognitively, was cooperative, and was attentive (Tr. 26). Furthermore, the ALJ reasoned, the opinion was contrary to Plaintiff's "own reports of activities of daily living of taking care of his children and household activities as well as traveling, going out with friends, participating in hobbies of scuba diving and volunteering with his son's football team" (Tr. 26).

As for Plaintiff's challenge to APRN Refuse's opinion, Plaintiff again fails to argue the ALJ's specific conclusions (*see* Doc. 22, at 27). Plaintiff simply re-argues the persuasiveness of the opinion (*see* Doc. 22, at 27 (arguing APRN Refuse's opinion was supported by her medical records and consistent with Dr. Butler's opinion)). Specifically, Plaintiff does not challenge the ALJ's reasoning that Dr.

Butler's opinion was unpersuasive because (1) it was not consistent with the objective record evidence of mental status exams which found Plaintiff intact cognitively, cooperative, and attentive; and, (2) it was contrary to Plaintiff's reports of taking care of his children and household, traveling, going out with friends, participating in hobbies of scuba diving, and volunteering with his son's football team. Thus, the ALJ's decision on this issue is due to be affirmed. *Walker,* 2022 WL 1022730, at *2; *Sapuppo*, 739 F.3d at 680.

In any event, here too, the ALJ's decision is supported by substantial evidence. The ALJ's finding that APRN Refuse's opinion was not consistent with the objective record evidence of mental status exams which found Plaintiff intact cognitively, cooperative, and attentive is supported by the record (*compare* Tr. 2636 (finding in November 2020 Plaintiff has constant impairment in the ability to understand and remember very short and simple instructions) *with* Tr. 2652 (noting in November 2020 that Plaintiff had intact cognitive functioning, intact short and long term memory, had the ability to abstract, was able to do arithmetic calculations, and had no attentional difficulties).  Additionally, the ALJ's finding that APRN Refuse's opinion was contrary to Plaintiff's reports of taking care of his children and household, traveling, going out with friends, going to the gym, participating in hobbies like scuba diving, and volunteering with his son's football team is also supported by the record (*compare* Tr. 2637 (finding in November 2020 Plaintiff has constant impairment in his ability to interact with the public and the ability to maintain socially appropriate behavior) *with* Tr. 839, 842, 854, 1102, 1116,

1650–51, 1738, 1743, 1746, 1749, 1767–68, 1780, 1804–6, 1844, 1848–49, 1852, 2010).

### ii.   Pre-Onset Medical Opinions

Plaintiff argues that the ALJ erred in failing to weigh Dr. Perez-Millan's or Dr. Letsch's opinions under the persuasiveness factors. The Commissioner does not dispute that the ALJ did not evaluate these opinions, rather, the Commissioner argues that both opinions are of limited relevance to the question of disability because the opinions predate the onset disability. Accordingly, the Commissioner argues, any error the ALJ committed in failing to articulate the persuasiveness afforded to these opinions is harmless.

Plaintiff's alleged disability onset date was April 30, 2017 (Tr. 15). In July 2015, Dr. Perez-Millan, a VA doctor, opined that Plaintiff's cervical spine condition impacted his ability to work through "mild effects" and difficulty tolerating repetitive or sustained neck movements or when turning his head side to side or to look up (Tr. 2197–99). He also opined Plaintiff's thoracolumbar spine condition impacted his ability to work also through "mild effects," specifically, through low back pain interfering with activities requiring repetitive or prolonged bending or lifting and the need to change positions (Tr. 2245–46). Additionally, Dr. Perez-Millan opined Plaintiff's knee conditions impacted his ability to perform occupational tasks through mild to moderate pain from activities such as running, squatting, repetitive bending at the knees, and when going up and downstairs (Tr. 2262).  Plaintiff also notes that Dr. Perez-Millan opined Plaintiff's conditions in his

shoulder, ankle, wrists, fingers, and hands also impacted his ability to perform occupational tasks (Tr. 2212–13, 2222–23, 2235, 2273). In 2015, Dr. Letsch opined Plaintiff had occupational and social impairments with reduced reliability and productivity (Tr. 2062). She also opined Plaintiff's PTSD symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning (Tr. 2070).

The burden was on Plaintiff to establish his entitlement to benefits during the specific time period between the alleged onset date and the date last insured. *Cassidy v. Comm'r of Soc. Sec. Admin.*, 383 F. App'x 840, 842 (11th Cir. 2010). Because of that, pre-onset date medical opinions are inherently of limited relevance to the question of disability during that period. *See, e.g.*, *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (stating that medical opinions were of limited relevance because they predated claimant's alleged disability date); *Colbert v. Comm'r of Soc. Sec.*, No. 6:19-cv-2176-LRH, 2021 WL 1103692, at *7 (M.D. Fla. Mar. 23, 2021) (failure to mention or weigh physician's report that pre-dated onset date "did not result in error"); *Potter v. Colvin*, No. 8:12–CV–1031–T–17TGW, 2013 WL 1347282, at *3 (M.D. Fla. Feb. 28, 2013) (finding no error where the ALJ failed to discuss or weigh treatment notes predating the alleged onset date by nearly three years because the evidence weas "too remote to be relevant to the issue of whether" the claimant was disabled on or after the alleged onset date); *Kranz v. Comm'r of Soc. Sec.*, No. 8:20-CV-2714-TPB-SPF, 2022 WL 3867856, at *6 (M.D. Fla. June 22, 2022) (noting that pre-onset medical opinions are of limited relevance), *report and*

*recommendation adopted*, No. 8:20-CV-2714-TPB-SPF, 2022 WL 3867558 (M.D. Fla. Aug. 30, 2022); *Naberhaus v. Kijakazi*, No. 8:20-CV-2190-SPF, 2022 WL 897540, at *11 (citations omitted) (M.D. Fla. Mar. 28, 2022) (noting the pre-onset evidence is of limited relevance).

Importantly, Plaintiff does not provide any argument regarding how the opinions are relevant or how the ALJ's failure to articulate their persuasiveness caused prejudice. Plaintiff instead summarizes the opinions and then, without elaboration, cites case law regarding the general duty of an ALJ to "state with particularity the weight he gave different medical opinions and the reasons therefor," *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987), and that "[w]ithout an explanation of the weight accorded by the ALJ, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830 (11th Cir. 2011) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (*see* Doc. 22, at 31). Be that as it may, Plaintiff must first establish the opinions are even relevant to the question of disability given that they predate the onset date—a task which Plaintiff's mere summary of the opinions fails to accomplish. Moreover, further undermining Plaintiff's position is the fact that Plaintiff continued to work until April 30, 2017, the alleged onset date (Tr. 15, 83). That is, the opinions which state Plaintiff's impairments impacted his ability to perform occupational tasks are inherently contradicted by the fact that Plaintiff was contemporaneously working. Plaintiff provides no argument to counter this point.

The evidence prior to Plaintiff's alleged onset date has limited relevance, and, thus, does not undermine the substantial evidence that supports the ALJ's RFC assessment. Moreover, Plaintiff provides no argument to the contrary. Thus, the ALJ did not commit reversible error in failing to discuss the pre-onset opinions.

### iii.  Definition of a Medical Opinion

Plaintiff also briefly argues that two additional sources of evidence qualify as medical opinions and therefore the ALJ was obligated to evaluate the persuasiveness of them. Not only does Plaintiff fail to develop his arguments, but neither source qualifies as a medical opinion.

 The new SSA regulations also altered the parameters of what qualifies as a medical opinion. The new SSA regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The previous definition of medical opinion was broader. The prior regulations provided that medical opinions were statements from

acceptable medical sources that reflect judgments not only about what the claimant can still do despite their impairment and the claimant's physical or mental restrictions, but also the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis. 20 C.F.R. § 404.1527(a). The Eleventh Circuit has yet to provide guidance on what qualifies as a medical opinion under the amended definition of medical opinions but as one district court decision explained, examples of medical opinions include "statements from a physician that a claimant can never lift more than twenty pounds, cannot understand and follow complex instructions, cannot tolerate anything more than occasional interaction with the public, or any other comments about the extent to which a claimant can or cannot perform a work-related function." *Dye*, 2022 WL 970186, at *4. Decisions from district courts within the Eleventh Circuit have generally held that medical findings or treatments, such as test results, prescriptions, or surgery recommendations, are not medical opinions. *See Maguire v. Saul*, No. 8:20-cv-710-T-TGW, 2021 WL 2284463, at *4 (M.D. Fla. June 4, 2021) (reasoning that medical findings are not medical opinions because they do not necessarily provide perspectives about claimant's functional abilities and limitations); *Wood v. Comm'r of Soc. Sec.*, No. 6:20-cv-963-LRH, 2021 WL 2634325, at *5 (M.D. Fla. June 25, 2021) (holding the ALJ did not err by failing to weigh opinions where a claimant pointed to nothing in the medical evidence besides medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis, "none of which constitute 'medical opinions'"); *Lucas v. Comm'r of Soc. Sec.*, No. 6:21-CV-1836

DAB, 2022 WL 2901219, at *4 (M.D. Fla. July 22, 2022) (reasoning the ALJ was not required to evaluate an ARNP's description of claimant's level of pain as "10/10" because it was not a medical opinion); *Alisa M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-559-CCB, 2022 WL 16752091, at *9 (N.D. Ga. Sept. 30, 2022) (holding doctors' recommendation that claimant have surgery was not a medical opinion). Decisions from this district have also held that general statements assessing that a claimant cannot work do not qualify as medical opinions. *See Matthews v. Comm'r of Soc. Sec.*, No. 8:22-CV-679-JSS, 2022 WL 17844054, at *10 (M.D. Fla. Dec. 22, 2022) (reasoning that because doctors' statements that claimant's depression and anxiety impacted her ability to work did not "specifically explain how Plaintiff's depression and anxiety impacted her ability to work and what Plaintiff could still do despite these impairments," the statements were not medical opinions); *Smith v. Comm'r of Soc. Sec.*, No. 5:21-CV-551-PRL, 2022 WL 17076709, at *4 (M.D. Fla. Nov. 18, 2022) (holding statements were not medical opinions where doctors "checked the box indicating that Plaintiff's narcolepsy impacted his ability to work" because the statements did not "specifically explain how narcolepsy impacted Plaintiff's ability to work and what Plaintiff could still do despite his narcolepsy").

### 1. Rehabilitation Counselor Scott

Plaintiff mentions that "the ALJ did not reference rehabilitation counselor Scott's opinion that it is not feasible for Plaintiff to benefit from a program designed to return him to gainful employment" (Doc. 22, at 31). Plaintiff does not elaborate further thus waiving this argument. *See Outlaw v. Barnhart*, 197 Fed. App'x 825, 828

n. 3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."); *Howze v. Soc. Sec. Admin.*, No. 21-11066, 2022 WL 152236, at *3 (11th Cir. Jan. 18, 2022) ("Because [the plaintiff] cites to no authority for this argument, she has abandoned it."). While the Court may end its inquiry here, it is also important to note that Mr. Scott's statement is merely a determination from the VA denying Plaintiff entry into a return-to-work program (Tr. 482) and is not a statement "about what [Plaintiff] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Thus, the Court rejects Plaintiff's argument.

### 2.  GAF Scores

Plaintiff also argues that the GAF scores are medical opinions that the ALJ was required to weigh (Doc. 22, at 31). Plaintiff argues that "a GAF score of 40, as assessed by APRN Barnes, indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant)" (Doc. 22, at 31 (citing Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR); Tr. 34). In support, Plaintiff cites *Castro v. Berryhill*, 783 F. App'x 948, 950 n.3 (11th Cir. 2019) and Soc. Sec. Admin., Administrative Message 13066 from July 22, 2013.

The Eleventh Circuit in *Castro* notes that the Social Security Administration issued a directive to its ALJs instructing them to consider GAF scores as medical opinion evidence. *Castro*, 783 F. App'x at 950. The directive, issued July 22, 2013, instructed the ALJs on how to consider GAF scores as medical opinions. Soc. Sec. Admin., Administrative Message 13066 (July 22, 2013). Importantly, both *Castro* and the directive concern the prior SSA regulations and not the amended definition of medical opinion. Effective June 28, 2017, the SSA revised its instructions to the ALJs, explaining that for claims filed after March 27, 2017, GAF scores are now categorized as "other medical evidence." *See* Soc. Sec. Admin., Administrative Message 13066 REV 2 (June 28, 2017). Thus, ALJs need not evaluate the GAF scores under the persuasiveness factors as required of medical opinions. Accordingly, the ALJ did not err.

In conclusion, the Court rejects all component parts of Plaintiff's multifaceted first argument. First, not only does Plaintiff fail to challenge to the ALJ's specific conclusions in support of his evaluation of the persuasiveness of the opinions, but the ALJ's evaluations of both Dr. Butler's and APRN Refuse's opinions were supported by substantial evidence and applied the correct legal standards. Second, the ALJ did not commit reversible error in failing to discuss the pre-onset opinions by Dr. Perez-Millan and Dr. Letsch. Finally, in addition to the fact that Plaintiff fails to develop his arguments regarding rehabilitation counsel Scott's opinion and the GAF scores, neither source qualifies as a medical opinion. Accordingly, the Court reject's Plaintiff first argument in its entirety.

### b.  Limitation to "simple instructions"

In Plaintiff's second argument, Plaintiff argues the RFC and hypothetical questions to the VE fail to reflect the limitations found by the ALJ by omitting the ALJ's finding that Plaintiff is limited to "simple tasks" (Doc. 22, at 42).

In the ALJ's evaluation of Plaintiff's mental impairments and his corresponding limitations, the ALJ stated that he "limited the claimant to simple instructions [and] routine repetitive unskilled tasks" (Tr. 24). Meanwhile, in forming Plaintiff's RFC, the ALJ assessed that, in relevant part, Plaintiff was able to "understand and carryout routine, repetitive, unskilled tasks" (Tr. 21). The ALJ's question to the VE also stated Plaintiff was "limited to understanding and carrying out routine, repetitive, unskilled tasks" (Tr. 62). Thus, the difference between the ALJ's finding and the RFC (and hypothetical question) is merely the exclusion of "simple instructions" and inclusion of "understand and carry out."

Plaintiff is correct that the ALJ must pose a hypothetical question to the vocational expert which comprehensively describes the claimant's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (holding that because the hypothetical question upon which the expert based his testimony failed to assume the existence of psychological problems which the ALJ found to be severe, the decision was not based on substantial evidence). In support of his position, Plaintiff cites to *Sanchez v. Astrue*, No. 8:06-CV-1832-T-EAJ, 2008 WL 822000 (M.D. Fla. Mar. 26, 2008), a decision in which the court found ambiguities and inconsistencies between the ALJ's findings regarding the claimant's RFC and the hypothetical

question posed to the VE which required clarification on remand. *Id.* at *5. In that case, the ALJ had found that due to her mental impairments, the claimant had "moderate difficulties in maintaining social functioning" yet the ALJ also found that the claimant "would frequently be able to interact with the public, supervisors, and co-workers and would frequently be able to maintain concentration, persistence, or pace." *Id.* The ALJ appeared to rely on the VE's response to a question which assumed that the claimant was able to "frequently . . . deal with public, co-workers, and supervisors" and "frequently . . . maintain concentration, persistence, and pace," but there was "an arguable tension" between that hypothetical question and the ALJ's other finding of a moderate limitation. *Id.*

Here, the difference between the ALJ's finding and the RFC/hypothetical question is merely the exclusion of "simple instructions" and inclusion of "understand and carry out." The Court agrees with the Commissioner that the phrase "simple instructions" and "routine, repetitive, unskilled tasks" necessarily implicates the ability to "understand and carry out" those "routine, repetitive, unskilled tasks." The two phrases are not meaningfully different and do not present the ambiguities that were present in *Sanchez*. Importantly, Plaintiff fails to explain how Plaintiff's RFC and the hypothetical questions identical to it are meaningfully inconsistent with the ALJ's findings (*see* Doc. 22, at 42–44).

Thus, the RFC—and hypothetical question formed based on it—were not inconsistent with the ALJ's findings and the Court rejects Plaintiff's second argument.

### c.  VA's Findings

Plaintiff's third argument challenges the sufficiency of the ALJ's consideration of the VA's findings related to Plaintiff's mental impairments, specifically PTSD (Doc. 22, at 44). Plaintiff argues that the ALJ failed to consider the evidence which supported the VA's finding of 70% disability in August 2016 for Plaintiff's PTSD and a combined disability rating of 100% (Tr. 316, 318). To his credit, Plaintiff acknowledges that the ALJ was not required to specifically weigh the VA's findings and accurately states that SSA regulations exclude "any analysis about how [the ALJ] consider[s] such evidence" in his decision. 20 C.F.R. § 404.1520b(c). Rather, Plaintiff states that the ALJ failed to consider the underlying evidence which supported the VA's findings, a requirement set out by 20 CFR § 404.1504, which states that the ALJ "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the ALJ] receive[s] as evidence in your claim in accordance with § 404.1513(a)(1) through (4)."

In its decision, the VA stated that it considered the following evidence in making its decision: DBQ NEURO TBI Review, DBQ Medical Opinion, treatment records from Bay Pines, treatment records from Dr. Kevin Butler, VA Form 21-526EZ, treatment records from Windmoor Health Care, and a DBQ PSYCH PTSD Review (Tr. 321). Plaintiff states that the ALJ did not reference diagnoses or treatment by Dr. Powell (Tr. 948), Dr. Harris (Tr. 883, 886, 912, 931), Dr. Kinsley (Tr. 917), LMHC Deraleau (Tr. 844, 845, 848, 851, 852, 853, 856, 857, 863, 864,

866, 868, 873, 1121), LMHC Martin (Tr. 771, 777, 809, 814, 815, 818, 819, 824, 832–34, 1024, 1085), Dr. Gorman (Tr. 1768, 1772), or APRN Barnes (Tr. 2541) (Doc. 22, at 45). As an initial matter, most of the evidence Plaintiff references post-dates the VA's decision which was issued January 6, 2017 (*see, e.g.,* Tr. 771 (December 2017); Tr. 845 (June 2017); Tr. 851 (May 2017); Tr. 883, 886 (January 13, 2017); Tr. 1121 (April 2017); Tr. 1768 (February 2019); Tr. 2541 (November 2019)). In other words, the evidence could not have been "supporting evidence underlying the other governmental agency or nongovernmental entity's decision" if it was not created until after the VA's decision was issued. 20 CFR § 404.1504. Moreover, the ALJ considered the evidence which supported the VA's findings. Indeed, while the ALJ might not have cited to each piece of this that evidence the VA stated it considered in its decision, the ALJ explicitly considered several sources of evidence from the VA: evidence from Bay Pines VAMC (Tr. 22–23) (citing Exhibit 2F), medications and treatment notes from Dr. Butler (Tr. 23) (citing Exhibit 3F), progress notes from the VA (Tr. 23) (citing Exhibit 16F), hospital records from the VA (Tr. 23) (citing Exhibit 25F), and progress notes from APRN Barnes (Tr. 23) (citing Exhibit 18F).

The Court also notes that the ALJ's obligation is to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the ALJ] receive[s] as evidence in your claim in accordance with § 404.1513(a)(1) through (4)." 20 CFR § 404.1504. Notably, "§ 404.1513(a)(1) through (4)" refers to the SSA regulation's general

categories of evidence. As a general matter, the ALJ need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211.

The ALJ demonstrated that he considered the underlying medical evidence that supported the ALJ's decision and otherwise considered Plaintiff's medical condition as a whole. Accordingly, the Court rejects Plaintiff's third argument.

### d. Moderate Limitations

Fourth, Plaintiff argues that the ALJ failed to include in the RFC restrictions related to moderate limitations in mental functioning and failed to exclude jobs requiring the ability to carry out detailed instructions given that the State agency psychological examiners found Plaintiff limited in understanding, remembering, and carrying out detailed instructions and the ALJ found those opinions highly persuasive (Doc. 22, at 49). Plaintiff first argues that the ALJ found the opinions of State agency psychological consultants highly persuasive, and because those opinions included moderate limitations in various mental functional areas, the ALJ was required to include those moderate limitations in the RFC. Plaintiff also extensively discusses a case, *Brunson v. Astrue*, 850 F. Supp. 2d 1293 (M.D. Fla. 2011), which attacks the moderate limitations issue from a different angle (Doc. 22, at 50). Though it is less than clear, presumably through discussion of this case, Plaintiff intends to argue that because the ALJ found Plaintiff moderately limited

39

in various functional areas at step two in the sequential evaluation, Plaintiff is entitled to certain limitations in the RFC. Both of Plaintiff's arguments are unavailing for the following reasons.

First, Plaintiff argues that the ALJ was obligated as a matter of law to include all of the limitations found in the medical opinions of state agency psychological consultants in the RFC because the ALJ had found the opinions "highly persuasive." Plaintiff's argument in this respect is rejected. A physician's opinion as to what a claimant can still do despite his or her impairments differs from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 404.1513(b) & (c), 404.1545, 404.1546; Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996). As SSR 96-5p explains:

> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC. Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.

SSR 96-5p, 1996 WL 374183, at *5. The task of determining a claimant's RFC and ability to work thus rests with the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Com'r,* 649 F. App'x 941, 945 (11th Cir. 2016); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). In accordance with this principle, the regulations state an ALJ is not required to defer to any medical opinion or prior administrative medical finding,

20 C.F.R. § 404.1520c(a), and do not require an ALJ to adopt every part of an opinion or prior administrative medical finding that he finds persuasive into the RFC. *See* 20 C.F.R. § 404.1520c(a)–(b). Thus, while the ALJ found the State agency psychological consultants' opinions highly persuasive, the ALJ was entitled to craft the RFC with the limitations as he saw reflected in the whole record.

Second, Plaintiff argues the RFC does not adequately reflect Plaintiff's moderate limitations. As already noted, to address Plaintiff's moderate mental health limitations, the ALJ limited Plaintiff's RFC to simple instructions, routine repetitive unskilled tasks, and occasional interaction with co-workers, supervisors, and the public (Tr. 24). Plaintiff cites *Brunson* in support of his challenge, summarizing the case but providing no argument. Importantly, *Brunson* was a case in which the ALJ found the claimant had moderate limitations in concentration, persistence, and pace but failed to make specific findings at the RFC stage of the sequential evaluation. *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1302–1303 (M.D. Fla. 2011). Additionally, the ALJ's questions of the VE regarded a hypothetical person that "needs to avoid unusual stress" and "needs simple tasks." *Id.* The court held this was insufficient to account for moderate limitations without further findings. *Id.* ("[I]f medical evidence affirmatively demonstrates that a plaintiff retains the ability to engage in simple, routine, or repetitive tasks, or unskilled work despite deficiencies in concentration, persistence, or pace, then including such restrictions in the hypothetical sufficiently accounts for the deficiencies."). Here, in contrast, the ALJ made specific findings to support the limitations imposed. In

support of the limitations included in the RFC, the ALJ properly found that Plaintiff's allegations regarding the severity of his mental health limitations were not supported by the record (Tr. 24). The ALJ acknowledged that Plaintiff has episodes of increased depression due to financial or familial stressors as well as "occasional triggers of mental symptoms causing abnormal mental status" (Tr. 24). However, the ALJ found that Plaintiff's symptoms were well managed with medication and Plaintiff has not required any emergency or inpatient care (Tr. 24). Additionally, the ALJ cited to Plaintiff's mental status examinations which have documented that Plaintiff was cooperative and attentive, had intact memory and cognition, and logical thought content (Tr. 24). The ALJ also noted Plaintiff's "significant daily activities including taking care of his children, traveling, scuba diving, going out with friends twice a week, volunteering at his son's football games, and doing household chores" (Tr. 24, 839, 842, 854, 1102, 1116, 1650–51, 1738, 1743, 1746, 1749, 1767–68, 1780, 1804–6, 1844, 1848–49, 1852, 2010). Moreover, courts have repeatedly concluded that similar limitations regarding an ability to understand, remember, and carry out simple instructions and to perform simple tasks sufficiently accounts for moderate difficulties in maintaining concentration, persistence, and pace in both the RFC and hypothetical questions to the VE. *See Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (finding a limitation to "simple unskilled, routine, and repetitive tasks, one-to three-step instructions" was sufficient to account for moderate limitations in concentration, persistence, and pace); *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 611–

13 (11th Cir. 2015) (finding substantial evidence supported ALJ's hypothetical that that claimant could only perform "simple, non-detailed tasks" where ALJ found moderate limitations in concentration, persistence, and pace); *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 767 (11th Cir. 2014) (finding moderate maintaining attention were encompassed by question which stated the hypothetical claimant "could understand, remember, and carry out simple instructions and procedures, ... may show occasional difficulty with more complex tasks, [and] could sustain task and perform an acceptable pace"); *see also Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014); *Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2013); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950–51 (11th Cir. 2013); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 690 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876–77 (11th Cir. 2012).

The Court finds that the limitations the ALJ included in the RFC adequately address Plaintiff's moderate mental impairments and are supported by substantial evidence. Thus, the Court rejects Plaintiff's fourth challenge to the ALJ's decision.

### e. SVP Level 2 Findings

In Plaintiff's fifth issue, Plaintiff argues the ALJ erred in finding Plaintiff could not perform work with an SVP level of 2 because the SSA "had told Plaintiff he could perform work requiring only a short, on-the-job training period consistent with SVP level 1" (Doc. 22, at 60). Plaintiff contends that the ALJ "gave no reason

for ignoring the [SSA's] repeated statements that Plaintiff could perform work equivalent to SVP 1" (Doc. 22, at 61).

Plaintiff refers to the disability examiners' findings which supported two prior disability determinations (Tr. 111–12, 129–30). The findings were contained in the attached explanations of those disability determinations and stated that Plaintiff's condition was not severe enough to prevent him from working because, among other things, he could perform work which requires "only a very short, on-the-job training period" (Tr. 112, 130).

Contrary to Plaintiff's argument, the ALJ was not bound by the disability examiners' findings. The SSA's initial determination is binding unless the claimant requests reconsideration, the agency revises the determination, or the claimant requests a hearing before an ALJ, and a decision is made. 20 C.F.R. §§ 404.905, 404.921. If a claimant requests an administrative hearing, the ALJ "must base [his or her] decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 404.953. Indeed, courts in this district have rejected Plaintiff's exact argument. *See Hedges v. Comm'r of Soc. Sec.*, No. 2:19-cv-833-FtM-MAP, 2021 WL 1186836, at *9 (M.D. Fla. Mar. 30, 2021) (rejecting argument that ALJ was limited to SVP 1 jobs because he was bound by statements at the initial and reconsideration level that claimant was capable of a job requiring "only a very short,  on-the-job training"); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, at *12 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) (same).

As for Plaintiff's argument that the ALJ "gave no reason for ignoring the [SSA's] repeated statements that Plaintiff could perform work equivalent to SVP 1," this contention is similarly unavailing (Doc. 22, at 61). "Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [a claimant] disabled" is "inherently neither valuable nor persuasive as to the issue of whether [a claimant] is disabled." *See* 20 C.F.R. § 404.1520b(c)(2)–(3). SSA regulations explicitly provide that the ALJ "will not provide any analysis about how [the ALJ] considered such evidence in [his] determination or decision." 20 C.F.R. § 404.1520b. Accordingly, the Court finds Plaintiff's fifth issue does not warrant reversal.

### f.  Limitation to Light Work

In Plaintiff's sixth argument, Plaintiff argues that ALJ erred in finding Plaintiff could perform more than sedentary work. Plaintiff argues the ALJ erred

> given that his knee X-ray showed osteoarthritis, his lumbar spine X-ray showed spondylosis, his body mass index was as high as 33.9 using the height estimated by the ALJ, Plaintiff testified he can only walk slowly around the block, he cannot walk up and down stairs due to pain in his lower back and knees, he can only stand two minutes, and he lies down every day due to pain and fatigue

(Doc. 22, at 64–65). Plaintiff couches his argument within the Medical-Vocational Guidelines ("grids"). Plaintiff argues that if the ALJ had found Plaintiff limited to sedentary work, Plaintiff would have qualified as disabled under the grids upon turning 50 in October 2020. Plaintiff's argument regarding the grids would be relevant if the Court were to find the ALJ erred. However, as discussed in the

following analysis, the Court finds that the ALJ's determination is supported by substantial evidence. Therefore, the Court will refrain from discussion of the grids.

In evaluating the record and determining Plaintiff's impairments, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24). However, to address Plaintiff's musculoskeletal impairments, the ALJ limited Plaintiff to the light exertional level with no more than frequent climbing, balancing kneeling, crouching, and crawling and occasional stooping (Tr. 24).

The ALJ rejected Plaintiff's allegations of further physical limitations as not consistent with the evidence of record. As already noted, when the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell*, 771 F.3d at 782; *Foote,* 67 F.3d at 1562. The Court finds that the ALJ's decision to discredit Plaintiff's subjective complaints is supported by substantial evidence. First, the ALJ noted that Plaintiff's treatment for back and knee pain has been minimal since the alleged onset date (Tr. 24). Second, the ALJ cited that Plaintiff's treating professionals had not reported any significant physical abnormalities and Plaintiff's

imaging contained only mild findings. Thus, the ALJ reasoned that the RFC of light work with postural limitations accounted for Plaintiff's obesity and the stress that excess weight can place on his weight bearing joints (Tr. 24). The ALJ also reasoned this would also address Plaintiff's obesity and how it may contribute to the limitation of the range of motion of the skeletal spine and extremities (Tr. 24). The record reflects these findings and supports the ALJ's RFC. While X-rays showed mild osteoarthritis in his knee and mild spondylosis in his lumbar spine (Tr. 1614–19), Dr. Lokesh's treatment records indicate no significant physical abnormalities prior to November 2017 (Tr. 22, 800–802, 1947–51, 2109–11). Indeed, Dr. Lokesh recommended merely that Plaintiff lose weight and be physically active (Tr. 1739, 1830, 1877, 1978). Moreover, Plaintiff was cleared as physically stable to do the master diver's certification in October 2018 (Tr. 1836–38). The ALJ also looked to Plaintiff reported activities, including travelling to several states, kayaking, diving, organizing his garage, taking care of his children and pets, going to the gym, hosting barbecues at his home, and volunteering with his son's football team (Tr. 839, 842, 854, 1102, 1116, 1650–51, 1738, 1743, 1746, 1749, 1767–68, 1780, 1804–6, 1844, 1848–49, 1852, 2010).

Importantly, Plaintiff does not dispute the ALJ's reasoning; rather, Plaintiff argues his "X-rays, knee and back impairments, obesity, and limitations on walking, standing, and sitting indicate he should have been limited to sedentary work at most" (Doc. 22, at 69). This is a clear example of requesting the Court to reweigh the evidence, a task this Court is not authorized to perform. *Winschel*, 631 F.3d at

1178; *Bloodsworth*, 703 F.2d at 1239. As the ALJ articulated explicit and adequate reasons for discounting Plaintiff's subjective complaints, the ALJ was not required to include any particular limitations in the RFC. That the ALJ included light work with postural limitations to address these concerns was supported by substantial evidence. Thus, the Court rejects Plaintiff's sixth argument.

###   B.     Separation of Powers

In Plaintiff's seventh and final argument, Plaintiff argues that the ALJ and the Appeals Council lacked the constitutional authority to decide his case. Plaintiff contends that 42 U.S.C. § 902(a)(3)'s removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and thus, the SSA's structure is constitutionally invalid (*see* Doc. 22 at 74–75 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).

The Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause" (Doc. 22, at 78 (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C., 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case. The Commissioner argues that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff (Doc. 22, at 79 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v.*

*Pehringer*, 8 F.4th 1123 (9th Cir. 2021))). Specifically, the Commissioner contends that regardless of the constitutionality of the removal restriction in 42 U.S.C. § 902(a)(3), a Senate-confirmed Commissioner has full authority to carry out the responsibilities of his or her office (Doc. 22, at 80). Expounding on this point, the Commissioner argues that the ALJ in the instant case held office under an appointment ratified by a former Acting Commissioner, and thus not subject to the removal restriction in 42 U.S.C. § 902(a)(3) (Doc. 22, at 80 n.12). Moreover, the Commissioner maintains that even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, Plaintiff cannot show that the removal restriction inflicted actual compensable harm on him (Doc. 22, at 81–83). The Commissioner also argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations (Doc. 22, at 85–88).

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision"). Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause. *See* 42 U.S.C. § 902(a)(3). In *Seila Law*, the Supreme Court found that the Consumer Financial Protection Bureau's ("CFPB") single-director structure, who could only be removed by the President for cause, violated constitutional separation of powers. 140 S. Ct. at 2197. The Supreme Court reasoned that the President retains ultimate responsibility for use of the executive power and has an active obligation to supervise executive officers to whom he may

delegate his authority. *Id.* at 2203. The Court found that this constitutional responsibility was thwarted by limitations on the President's ability to remove the Director of the CFPB. *Id.* However, the Supreme Court held that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Id.* at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

In a similar case, the Supreme Court relied on *Seila Law* in finding that "[a] straightforward application of our reasoning in *Seila Law*" likewise rendered unconstitutional the statutory protection from removal except for cause that was afforded to the Director of the Federal Housing Finance Authority ("FHFA"). *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). Thus, the Court held that the provision limiting the President to removing the director of the FHFA only for cause violated the separation of powers. *Id.* at 1783 (holding that "*Seila Law* is all but dispositive"). Notwithstanding, the Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." 141 S.Ct. at 1781. The Court also concluded:

> All the officers who headed the [agency] during the time in question were properly appointed. Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] in relation to the [challenged action] as void.

*Id.* at 1787. Nevertheless, the Court noted that to obtain retrospective relief, a plaintiff must show that "an unconstitutional provision ... inflict[ed] compensable harm." 141 S. Ct. at 1789.

Although, the Eleventh Circuit has yet to rule on this precise constitutional challenge, "[m]ultiple courts reviewing denials of applications for Social Security Benefits in the wake of *Seila Law* and *Collins* have similarly concluded plaintiffs must establish the removal provision of 42 U.S.C. § 902(a)(3) caused some compensable harm to warrant remand." *Dixon v. Kijakazi*, No. 20-82316-cv-Smith/Matthewman, 2022 WL 2908497, at *12 (S.D. Fla. May 26, 2022), *report and recommendation adopted*, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (quoting *Rickles v. Kijakazi*, 2022 WL 1153803, at *5–6 (M.D. Fla. Apr. 19, 2022) (finding that claimant did not establish that the ALJ's review of her Social Security claim for benefits suffered from any "unconstitutional taint" because she failed to argue that she suffered any form of compensable harm stemming from the removal provision of 42 U.S.C. § 902(a)(3)); *see also Smith v. Kijakazi*, 2022 WL 1063640, at *9 (N.D. Ala. Apr. 8, 2022) (rejecting the claimant's argument that Commissioner Saul's extended tenure affected her disability determination because it was conclusory.).

In the instant case, Plaintiff asserts that the government deprived him of a valid administrative adjudicatory process (Doc. 22, at 75). Plaintiff argues that former Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional (Doc. 22, at 75). Plaintiff contends that

because former Commissioner Saul delegated his authority to the ALJ who issued a decision in his case and the ALJ decided this case under regulations promulgated by former Commissioner Saul, the delegation of authority was constitutionally defective and a "presumptively inaccurate legal standard was utilized to adjudicate this disability claim at the administrative level" (Doc. 22, at 75).

Even assuming *arguendo* that the removal provision is unconstitutional, Plaintiff is not entitled to a remand based on this argument because the removal provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.

As noted by the Commissioner, the ALJ who rendered the decision in this case was appointed by former Acting Commissioner Nancy Berryhill (Doc. 22, at 80 n.12). Thus, unlike a commissioner who is appointed by the President and confirmed by the Senate, an *Acting* Commissioner does not enjoy a statutory tenure protection. *See* 42 U.S.C. 902(b)(4); *see also Boger v. Kijakazi*, No. 1:20-cv-00331, 2021 WL 5023141, at * 3 n.4 (W.D.N.C. Oct. 28, 2021) ("Indeed, Plaintiff's constitutional 'removal restriction' argument is likely not even applicable to this case because ALJ Howard was appointed by an *Acting* Commissioner of Social Security who could be removed from that office at the President's discretion."). Since the President is not restricted from removing an Acting Commissioner, the actions taken under the Acting Commissioner, including appointing an ALJ, would not be attributable to a constitutional violation. *See Collins*, 141 S.Ct. at 1781, 1787.

Moreover, while the Supreme Court in *Collins* found that an unconstitutional removal provision could "inflict compensable harm," Plaintiff has failed to identify how the removal provision at issue here caused him compensable harm. *See Collins*, 141 S. Ct. at 1788–89. The record and briefing is absent of any evidence that suggests that the President's restriction to remove Commissioner Saul somehow affected the ALJ's and, ultimately, the Commissioner's decision to find Plaintiff not disabled. Therefore, Plaintiff's separation of powers argument has no merit.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of March, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

53